IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CTR PARTNERSHIP, L.P.,

        Plaintiff,

v.                                                Case No. 25-2331-JWB

PRAIRIE RIDGE HEALTH &
REHABILITATION, L.L.C.; SUMMIT
HEALTHCARE MANAGEMENT, L.L.C.; and
BENJAMIN BRYANT,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's motion for default judgment. (Doc. 9.) Defendants have not filed a response. For the reasons stated herein, the motion is GRANTED IN PART and DENIED IN PART and Plaintiff is granted leave to re-file a motion for attorney's fees and costs within 14 days after entry of judgment in this matter.

**I.  Facts**

The facts contained herein are from Plaintiff's complaint, filed on June 19, 2025. (Doc. 1.) CTR Partnership, L.P. ("Plaintiff") brings this action against Prairie Ridge Health & Rehabilitation, L.L.C. ("Prairie Ridge"); Summit Healthcare Management, L.L.C. ("Summit"); and Benjamin Bryant ("Bryant") (collectively "Defendants"). (*Id*.) Plaintiff is the landlord of a nursing facility located in Overland Park, Kansas, who entered a Master Lease with Prairie Ridge on March 6, 2023. (*Id*. ¶ 12; *see also* Doc. 1-1.) The lease required Prairie Ridge to pay monthly rent and facility-related expenses, including property taxes, insurance, and operating costs, and granted Plaintiff a security interest in Prairie Ridge's accounts receivable. (Doc. 1 ¶¶ 13-14; *see*

1

*also* Doc. 1-1 at 4, 8–10, 43–44.) In conjunction with the Master Lease, Summit and Bryant executed a guaranty ("Guaranty Agreement") unconditionally guaranteeing Prairie Ridge's obligations under the Master Lease on March 6, 2023. (Doc. 1 ¶ 15; *see also* Doc. 1-2.)[1]

Plaintiff later provided two working capital loans to Bryant: $293,820.57 via promissory note dated January 18, 2024, and $300,000 via promissory note dated February 2, 2024 (collectively "Promissory Notes"). (Doc. 1 ¶¶ 16-17; *see also* Docs. 1-3, 1-4.) Shortly after, Prairie Ridge defaulted on the Master Lease by failing to pay rent and other required expenses. (Doc. 1 ¶ 18.) Around the same time, Bryant also failed to make required monthly payments under the Promissory Notes. (*Id.* ¶ 19.)

On May 8, 2024, Plaintiff notified Defendants that they were in default under the Master Lease, Guaranty Agreement, and Promissory Notes, and terminated the Master Lease. (*Id.* ¶ 20.) As part of the notice, Plaintiff demanded Defendants cooperate in transitioning operations of the nursing facility to a new operator. (*Id.* ¶ 21.) The parties then entered an agreement ("Transition Agreement") dated June 12, 2024, under which Defendants agreed to use best efforts to cooperate in the operational transition of the nursing facility to a new operator and to collect and turn over all of Prairie Ridge's accounts receivable to Plaintiff pursuant to Plaintiff's security interest. (*Id.* ¶¶ 22-24; Doc. 1-5 at 3–4.)

The Transition Agreement identified the repayment amounts owed in escrow under the Master Lease, and the loan principal and accruing interest under the Promissory Notes—all of which, as of July 31, 2024, totaled $770,165.78—plus any amounts recouped from the new operator by third-party payors. (*Id.* ¶ 25; Doc. 1-5 at 4–5.) As part of the Transition Agreement, Defendants agreed that these amounts were to be repaid from Defendants' $136,424.97 security

---

[1] Prairie Ridge and Summit are Kansas limited liability companies. (Doc. 1 ¶¶ 6, 7.) Prairie Ridge and Summit both have a single member: Benjamin Bryant. (*Id.*)

2

deposit and the proceeds from Prairie Ridge's collected accounts receivable, all of which Defendants agreed to turn over to Plaintiff. (Doc. 1 ¶¶ 26-28; Doc. 1-5 at 3–5.) In exchange for Defendants' full cooperation under the Transition Agreement, Plaintiff agreed to release them from guaranty and promissory note obligations and pay Bryant a $150,000 cooperation fee in two $75,000 installments. (Doc. 1 ¶¶ 29-30; Doc. 1-5 at 6.)

On September 1, 2024, the transition of the nursing facility operations to a new operator was completed, and pursuant to the Transition Agreement Plaintiff paid Bryant the first $75,000 installment. (Doc. 1 ¶¶ 31-32.) To receive the second $75,000 installment, Defendant Bryant was required to collect and turn over Prairie Ridge's accounts receivable. (*Id*. ¶¶ 26-28.) Despite Defendants collecting a significant portion of these receivables—as of August 22, 2024, Prairie Ridge's accounts receivable totaled $2,759,384.82—Defendants remitted a single $40,000 payment to Plaintiff and failed to provide any information about collection attempts. (*Id*. ¶¶ 33-37.) On June 19, 2025, Plaintiff filed this action. As of the complaint's filing, there is no indication that Defendants have paid the amounts due nor turned over control of the accounts receivable.

Plaintiff brought five claims. First is a breach of contract against Defendants as to the Transition Agreement. (*Id*. ¶¶ 38-44.) Second, Plaintiff seeks a declaration of rights that due to Defendants' breach of the Transition Agreement, Plaintiff's release therein is void. (*Id*. ¶¶ 45-49.) Third is a claim of breach of lease against Prairie Ridge as to the Master Lease. (*Id*. ¶¶ 50-55.) Fourth is a breach of contract against Summit and Bryant as to the Guaranty Agreement. (*Id*. ¶¶ 56-62.) Fifth, Plaintiff brings a breach of the Promissory Notes against Bryant. (*Id*. ¶¶ 63-68.)

Plaintiff served Defendants on September 8, 2025, and the summonses were returned executed on September 12, 2025. (Docs. 4–6.) Based on this date, Defendants had until September 29, 2025, to answer or otherwise respond. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) (providing 21 days

to answer after summons and complaint served). To date, Defendants have not entered an appearance, answered, or filed any other form of responsive pleading. After applying for and receiving a clerk's entry of default, Plaintiff moved for default judgment on November 19, 2025. (Docs. 7–9.) Plaintiff seeks a judgment against Defendants jointly and severally for the following:

> (1) Compensatory damages in the amount of $501,379.63 plus $164.40 per day for each day between November 5, 2025 and entry of judgment, which amounts consist of the following: $375,040.72 in principal under the notes, $51,338.91 in accrued interest under the notes through November 4, 2025 plus $164.40 per day in interest thereafter through entry of judgment, . . .
> (2) [R]eturn of $75,000 paid by Plaintiff to Bryant under the Transition Agreement for Bryant's anticipated performance of certain obligations under the Transition Agreement, which Bryant failed to perform;
> (3) Post-judgment interest from and after the date of judgment accruing pursuant to 28 U.S.C. § 1961;
> (4) Attorneys' fees in the amount of $21,279.002; and
> (5) Costs in the amount of $1,340.40.3.

(Doc. 9 at 3–4) (citations omitted).

## II.   Standard

Defendants have failed to defend this case. Default judgment may be entered against a party who fails to appear or otherwise defend. Fed. R. Civ. P. 55. The party must first seek an entry of default from the clerk and then move for default judgment with the court. *Id*. The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003). Because Defendants failed to answer, plead, or otherwise defend this action, they are deemed to have admitted as true the factual allegations in the complaint. *Id*. at 1125. However, a mere failure to defend is not sufficient, in and of itself, to result in default judgment. *Miller v. Oklahoma Dep't of Hum. Servs.*, No. 23-6119, 2024 WL 2828863, at *4 (10th Cir. June 4, 2024). Instead, the court is obligated to determine whether the allegations in the complaint, taken as true, entitle plaintiff to prevail on some or all of its claims. *Id*. Thus, before entering default judgment against Defendants, the court has an

4

affirmative duty to investigate its jurisdiction over the parties. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *Hukill v. Okla. Native Am. Domestic Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008) ("[A] default judgment in a civil case is void if there is no personal jurisdiction over the defendant.").

Turning to the merits, once default is entered Defendants are not entitled to defend themselves on the merits and the court must determine whether Plaintiff's allegations, taken as true, state a claim against Defendants. *Kalinich v. Grindlay*, No. 14-1120-SCA, 2014 WL 3740439, at *1 (D. Kan. July 30, 2014). If there is a sufficient basis for default judgment, that judgment establishes only liability. *Hermeris, Inc. v. McBrien*, No. 10-2483-JAR, 2012 WL 1091581, at *1 (D. Kan. Mar. 30, 2012). "Damages may be awarded only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1275 (D. Kan. 2016) (quoting *DeMarsh v. Tornado Innovations, L.P.*, Case No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009)). Further, a court may enter a default judgment without a hearing if the amount claimed is a liquidated sum or one capable of mathematical calculation. *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983); *Hermeris, Inc.*, 2012 WL 1091581, at *1 ("Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts.") (citation omitted).

**III.   Analysis**

Plaintiff has sought and received a clerk's entry of default as required by Rule 55(a). (Docs. 7, 8.) *See Watkins v. Donnelly*, 551 F. App'x 953, 958 (10th Cir. 2014) ("Entry of default by the clerk is a necessary prerequisite that must be performed before a district court is permitted to issue

a default judgment."). Thus, this court proceeds to the analysis of whether it has jurisdiction and if Plaintiff's factual allegations sufficiently state a claim against Defendants.

### A. Jurisdiction

For Plaintiff to prevail on the instant motion, the court must have subject matter jurisdiction over the claims and personal jurisdiction over Defendants. The court considers each in turn.

#### 1. Subject Matter Jurisdiction

A federal court "has an affirmative duty to determine whether it has subject matter jurisdiction" prior to issuing a default judgment. *Ross v. Jenkins*, 325 F.Supp.3d 1141, 1161 (D. Kan. 2018) (quoting *Olivas v. Bentwood Place Apartments, LLC*, No. 09-4035-JAR, 2010 WL 2952393, at *6 (D. Kan. July 26, 2010)). One statutory basis for subject matter jurisdiction is diversity jurisdiction pursuant to 28 U.S.C. § 1332. Section 1332 authorizes federal courts to hear a case when the parties are completely diverse and the amount in controversy exceeds $75,000. "Diversity jurisdiction requires complete diversity—no plaintiff may be a citizen of the same state as any defendant." *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015). To determine whether diversity jurisdiction exists, the court considers each litigant's state of citizenship. 28 U.S.C. § 1332(a). "Where, as here, the issue is determined on the basis of the pleadings and affidavits, that burden may be met by a prima facie showing." *IMM, LLC v. Plankk Techs. Inc.*, No. 19-cv-02629-CMA, 2020 WL 902320, at *2 (D. Colo. Feb. 25, 2020).

Here, the complaint establishes the court's subject matter jurisdiction. The complaint alleges that Plaintiff is a Delaware limited partnership with its principal place of business in California. (Doc. 1 at ¶ 5.) Plaintiff's partners are CareTrust GP, LLC, a Delaware limited liability company with its principal place of business in California, and CareTrust REIT, Inc., a Maryland corporation with its principal place of business in California. The sole member of CareTrust GP,

LLC is CareTrust REIT, Inc. As such, Plaintiff is a citizen of Maryland and California for diversity purposes. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015) (holding that citizenship of a limited partnership is determined by the citizenship of its partners).

As for Defendants, Prairie Ridge and Summit are Kansas limited liability companies. (Doc. 1 ¶¶ 6, 7.) Prairie Ridge and Summit both have a single member: Benjamin Bryant, an individual who lives in and is domiciled in Kansas. (*Id.*) *See Siloam Springs Hotel, LLC*, 781 F.3d at 1234 ("[A]n LLC, as an unincorporated association, takes the citizenship of all its members."). Additionally, Benjamin Bryant is a defendant in his individual capacity. (*Id.* ¶ 8.) Because Benjamin Bryant, who is the sole member of Prairie Ridge and Summit, resides in Kansas, Defendants are considered citizens of Kansas for diversity purposes. (*Id.* ¶¶ 6–8.) Accordingly, there is complete diversity between the parties. The amount in controversy also exceeds $75,000. *Id.* § 1332(a). (Doc. 12 ¶ 16.) *See Interstate Med. Licensure Compact Comm'n v. Bowling*, 113 F.4th 1266, 1274 (10th Cir. 2024) (holding that § 1332's amount-in-controversy requirement looks to the allegations in the complaint). Therefore, the court has subject matter jurisdiction over the case.

2. **Personal Jurisdiction**

The court must also determine if it has personal jurisdiction over Defendants. The record reflects that Defendant Bryant was properly served—both individually and on behalf of Prairie Ridge and Summit—with the alias summons on September 8, 2025. (Docs. 4–6.) *See* K.S.A. § 60-304(e) (explaining that proper service on both an LLC and its officer individually includes serving the officer). Further, "entering into an express or implied contract . . . to be performed in whole or in part by either party in [Kansas]" is sufficient to subject an individual and an LLC to personal jurisdiction. *Id.* § 60-308(b)(1)(E). Here, Plaintiff's claims arise out of contracts entered

7

into with all Defendants, that were to be performed, at least in part, at the nursing facility in Overland Park, Kansas. (Doc. 1 ¶ 12.) Accordingly, the court may exercise personal jurisdiction over each of the three defaulting Defendants. Satisfied that this court has jurisdiction, the court proceeds to the merits of Plaintiff's claims.

### B. Plaintiff's Claims Against Defendant

To prevail on default judgment, Plaintiff must allege facts sufficient to state its claims. However, the court must first determine which state's laws govern Plaintiff's claims.

#### 1. Choice of Law

In a federal diversity case, the court applies the substantive law of the forum state, including its conflict-of-laws rules. *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010) (citation omitted). Kansas "follows the general rule that the law of the state where the [] contract is made controls." *Safeco Ins. Co. of America v. Allen*, 941 P.2d 1365 (1997). However, "[w]here the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement." *Brenner v. Oppenheimer & Co.*, 44 P.3d 364, 375 (Kan. 2002). Indeed, "[f]ederal courts in Kansas routinely enforce the parties' contractual choice-of-law provisions under Kansas choice-of-law rules." *Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F.Supp.2d 1269, 1273 (D. Kan. 1998).

Here, the Promissory Notes unambiguously state they were "to be governed by and construed in accordance with the laws of the State of Kansas." (Docs. 1-3 at 4, 1-4 at 4.) As for the Transition Agreement, it contains no choice of law provision. (Doc. 1-5.) But under Kansas law, the law of the forum applies to breach of contract claims unless a party expressly shows a different forum's law should govern the dispute. *Brenner*, 44 P.3d at 375; *Mirville v. Allstate*

*Indem. Co.*, 71 F.Supp.2d 1103, 1107 (D. Kan. 1999).  In any event, where "a party fails to make 'a clear showing that another state's law should apply,' Kansas choice of law principles require a court to default to Kansas substantive law." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 982 (10th Cir. 2014) (quoting *In re K.M.H.*, 169 P.3d 1025, 1032 (Kan. 2007)).  Moreover, Plaintiff alleges that the Transition Agreement was entered into with Defendants who are Kansas residents, and it was to be performed in Kansas.  (Doc. 1 ¶¶ 23 – 32.)  Therefore, enforcing the parties' contractual choice-of-law provisions, along with the law of the forum where the contract does not otherwise have a choice-of-law provision, the court will apply Kansas law in evaluating the sufficiency of the pleadings to support a breach of contract claim as to the Transition Agreement and the Promissory Notes.

The Master Lease and Guaranty Agreement contain choice of law provisions requiring application of Maryland law.  (Docs. 1-1 at 47; 1-2 at 9.)  Accordingly, when addressing the breach of contract claims involving the Master Lease and Guaranty Agreement, the court will apply Maryland law.  *See Altrutech*, 6 F.Supp.2d at 1273 ("Federal courts in Kansas routinely enforce the parties' contractual choice-of-law provisions.").

    **2. Breach of Transition Agreement**

In Kansas, a breach of contract claim requires Plaintiff to prove the following elements: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013) (citing *Com. Credit Corp. v. Harris*, 510 P.2d 1322, 1325 (Kan. 1973)).

9

Here, on June 12, 2024, Plaintiff entered a valid contract with Defendants. Its express terms demonstrate that in exchange for Defendants' full cooperation under the Transition Agreement—including collection of and turning over the accounts receivables—Plaintiff agreed to release them from guaranty and promissory note obligations and pay Bryant a $150,000 cooperation fee in two $75,000 installments. (Doc. 1 ¶¶ 29-30; Doc. 1-5 at 6.) *See M West, Inc. v. Oak Park Mall, L.L.C.*, 234 P.3d 833, 846 (Kan. Ct. App. 2010) (explaining that a written agreement containing the parties' intent to be bound by the agreement's terms suggests a contract exists). On September 1, 2024, the operational transition of the nursing facility to a new operator occurred, and, pursuant to the Transition Agreement, Plaintiff paid Bryant the first $75,000 installment. (Doc. 1 ¶¶ 31-32.) Retaining this first installment was expressly contingent on Defendant Bryant fulfilling the entirety of his obligations under the contract—namely, turning over the accounts receivable. (Doc. 1-5 at 6.) As of August 22, 2024, Prairie Ridge's accounts receivable totaled $2,759,384.82. (Doc. 1 ¶ 33.) Yet despite Defendant Bryant collecting a significant portion of these receivables, he remitted a single $40,000 payment to Plaintiff and failed to provide any information about collection attempts. (*Id*. ¶¶ 34-37.) In other words, Plaintiff performed, but Defendants did not. *Peterson v. Ferrell*, 349 P.3d 1269, 1274–75 (Kan. 2015) (holding a party breaches a contract when it fails to perform its contractual obligations). Accordingly, Plaintiff suffered damages of $75,000 because Defendants materially breached the Transition Agreement by failing to turn over all post-transition collections of accounts receivable to Plaintiff and refusing to provide information regarding the same.

Therefore, the court finds that Plaintiff successfully stated a claim for breach of contract regarding the Transition Agreement against Defendants.[2]

---

[2] Count II in Plaintiff's complaint seeks a declaration of rights that because Defendants' materially breached the Transition Agreement, Plaintiff's release of Defendants' obligations under the Promissory Notes and Guaranty

### 3. Breach of Master Lease

Plaintiff alleges a claim for breach of contract regarding the Master Lease, where the choice of law provision designates Maryland. Specifically, Plaintiff alleges that Prairie Ridge breached the Master Lease in various manners, including by failing to pay rent and other facility-related expenses, resulting in damages to Plaintiff. (Doc. 1 ¶¶ 50-55.) The elements of a breach of contract claim under Maryland law are: (1) offer and acceptance, (2) consideration, (3) definite terms, (4) performance by the plaintiff, (5) breach, and (6) damages. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013); *Maslow v. Vanguri*, 896 A.2d 408, 421-423 (Md. 2006).

Here, Plaintiff entered a valid Master Lease with Prairie Ridge on March 6, 2023. (Doc. 1 ¶ 12; *see also* Doc. 1-1.) The lease required Prairie Ridge to pay monthly rent and facility-related expenses in exchange for the right to operate the nursing facility. (Docs. 1 ¶ 13; 1-1 at 4, 8–10.) Plaintiff performed its obligations by providing Prairie Ridge the leased premises. (Doc. 1 ¶ 12.) Prairie Ridge breached by failing to meet financial covenants outlined in the lease. (*Id.* ¶ 18.) As a result of Prairie Ridge's breach, Plaintiff suffered damages, including unpaid rent and expenses, and was forced to terminate the lease and pursue collection efforts. (*Id.* ¶¶ 18, 20.)

Therefore, the court finds that Plaintiff successfully stated a claim of breach of contract regarding the Master Lease against Defendant Prairie Ridge.

### 4. Breach of Guaranty Agreement

---

Agreement is void. (Doc. 1 ¶¶ 45-49.) The court has already found that Defendants failure to turn over and/or provide information regarding accounts receivable collections to Plaintiff amounted to a material breach of the Transition Agreement. And the Transition Agreement explicitly states that Defendants will be released from their obligations under the Promissory Notes and Guaranty Agreement only upon complying with their obligations under the Transition Agreement. (Doc. 1-5 at 6.) Because they failed to comply with their obligations under the Transition Agreement, "[t]he release . . . shall be null and void" as a consequence. (*Id.*) *See Godfrey v. Chandley*, 811 P.2d 1248, 1250–51 (Kan. 1991) (holding if the contract's language is unambiguous and can be carried out as written, courts must give effect to the contractual language when making declarations); *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1055 (10th Cir. 2019) (permitting courts to determine whether a contract exists, whether it has been breached, and make declarations predicate to such determinations).

Plaintiff alleges breach of contract regarding the Guaranty Agreement, where the choice of law provision designates Maryland. Specifically, Plaintiff alleges that Defendants Summit and Bryant materially breached the Guaranty Agreement by failing to pay Prairie Ridge's obligations under the Master Lease, resulting in damages to Plaintiff. (Doc. 1 ¶¶ 56-62.) The elements for breach of contract under Maryland law are (1) offer and acceptance, (2) consideration, (3) definite terms, (4) performance by the plaintiff, (5) breach, and (6) damages. *Spaulding*, 714 F.3d at 777.

Here, Summit and Bryant entered into a valid Guaranty Agreement with Plaintiff on March 6, 2023. (Doc. 1 ¶ 15; *see also* Doc. 1-2.) Under the agreement, Summit and Bryant guaranteed payment and performance of all Prairie Ridge's obligations under the Master Lease in exchange for Plaintiff's willingness to lease the facility to Prairie Ridge. (Doc. 1 ¶ 15.) Plaintiff performed by leasing the facility to Prairie Ridge. (*Id*. ¶ 12.) Summit and Bryant breached by failing to pay and perform Prairie Ridge's obligations under the Master Lease after Prairie Ridge defaulted. (*Id*. ¶¶ 18, 60.) As a result, Plaintiff suffered damages in the form of unpaid amounts owed under the Master Lease that Summit and Bryant were obligated to pay. (*Id*. ¶ 61.)

Therefore, the court finds that Plaintiff successfully stated a claim for breach of contract regarding the Guaranty Agreement against Defendant.

### 5. Default on Promissory Notes

In Kansas, an alleged default under a promissory note amounts to a breach of contract. *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. All Gen. Lines Ins., LLC*, No. 10-2126-CM, 2013 WL 1151277, at *1 (D. Kan. Mar. 20, 2013). Therefore, to succeed, Plaintiff must show (1) the existence of a contract; (2) consideration; (3) performance by the plaintiff; (4) defendant's breach of the contract; and (5) damages. *City of Andover v. Sw. Bell Tel., L.P.*, 153 P.3d 561, 565 (Kan. Ct. App. 2007).

Here, Plaintiff alleges that Bryant defaulted under and therefore materially breached the Promissory Notes by failing to pay amounts due to Plaintiff. (Doc. 1 ¶¶ 63-68.) Plaintiff's motion for default judgment is supported by the affidavit of James Callister, the Chief Investment Officer for Plaintiff, which addresses all the necessary elements for a breach of contract action. (Doc. 9-3.) Plaintiff's motion also cites to the complaint which includes as exhibits the Promissory Notes. (*See* Docs. 1-3, 1-4.) Specifically, Plaintiff put forth evidence that Defendant Bryant signed the Promissory Notes on January 18, 2024, and February 2, 2024, respectively. (*Id.*) In the Promissory Notes, Defendant Bryant promised to pay the sum of both notes totaling $593,820.57 with interest thereon at 12% per annum, to be increased to 16% if he defaulted. (*Id.*) This money was extended to finance the working capital needs of Prairie Ridge, which was wholly owned by Bryant, in exchange for Bryant's promise to make payments under the loan. Bryant failed to make the payments. Finally, Plaintiff has demonstrated that it has been damaged because of the breach based on the currently outstanding amount of $426,379.63, as of November 4, 2025.

Therefore, the court finds that Plaintiff successfully stated a claim for breach of contract regarding the Promissory Notes against Defendant Bryant and is entitled to interest accruing from and after November 5, 2025, at the daily rate of $164.40.

**C. Damages**

While facts are taken as true in determining liability as part of a default judgment motion, the same is not true of damages. Instead, when damages claimed by Plaintiff are capable of mathematical calculation, Rule 55(b)(2) allows awarding such damages "only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Mathiason*, 187 F.Supp.3d at 1275; Fed. R. Civ. P. 55(b)(2) (stating the district court "may conduct hearings")). Here, Plaintiff requests damages with post-

13

judgment interest along with attorney's fees and costs. (Doc. 9 at 3–4.) The court will address each in turn.

### 1. Damages and Post-Judgment Interest

Because the allegations of the complaint are sufficient to establish the elements of each of Plaintiff's claims, Plaintiff is entitled to damages. Plaintiff seeks actual damages based on Defendants' default on the Promissory Notes and breach of the Transition Agreement totaling $501,379.63,[3] along with post-judgment interest pursuant to 28 U.S.C. § 1961. (Doc. 9 at 3–4.) In light of the evidence in the record, the court finds an award of these damages to be sufficiently supported.

In a diversity case, state law governs an award of damages. Plaintiff is entitled to recover damages that "may fairly be considered as arising, in the usual course of things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach." *Hochman v. Am. Family Ins. Co.*, 673 P.2d 1200, 1203 (Kan. 1984); *see also Earth Scientists (Petro Servs.) Ltd. v. U.S. Fid. & Guar. Co.*, 619 F. Supp. 1465, 1475 (D. Kan. 1985). "[I]n order for evidence to be sufficient to warrant recovery of compensatory damages there must be some reasonable basis for computation which will enable a court or jury to arrive at an approximate estimate thereof." *Denman v. Aspen Drilling Co.*, 520 P.2d 1303, 1307 (1974). Contract damages do not have to be established with certainty; however, they "cannot be too conjectural and speculative to form a sound basis for measurement." *Brown v. United Methodist Homes for the Aged*, 815 P.2d 72, 86 (1991).

First, Plaintiff seeks damages under the Promissory Notes. (Doc. 9 at 3–4.) Plaintiff has alleged that the combined total of the Promissory Notes was originally $593,820.57 and submitted

---

[3] The damages sought by Plaintiff come solely from alleged breaches of the Promissory Notes and the Transition Agreement. (Doc. 9 at 3-4.) Therefore, the court applies Kansas law where appropriate.

14

an affidavit from James Callister, Plaintiff's Chief Investment Officer, stating that, to date, Defendants have failed to pay $375,040.72 in principal and $51,338.91 in accrued interest. (Doc. 9-3.) Plaintiff has also submitted a copy of the Promissory Notes which state the total amount lent by Plaintiff and is signed by Defendant Bryant. (Docs. 1-3, 1-4.) Additionally, the Promissory Notes indicate that the interest rate would be 16% per annum, which amounts to $164.40 per day for each day between November 5, 2025, and entry of judgment. (*Id*.) The court finds the evidence submitted satisfies the requirements of Rule 55 and therefore enters judgment totaling $426,379.63 with regard to breach of the Promissory Notes.

Second, Plaintiff seeks damages under the Transition Agreement. (Doc. 9 at 3–4.) Here, Plaintiff has demonstrated by the express terms of the Transition Agreement that in exchange for Defendants' cooperation in facilitating the transition of ownership, including turning over the account receivables and associated collection efforts, that Plaintiff would pay Bryant a $150,000 cooperation fee in two $75,000 installments. (Doc. 1 ¶¶ 29-30; Doc. 1-5 at 6.) Pursuant to the Transition Agreements terms, Plaintiff paid Bryant the first installment. (Doc. 1 ¶¶ 31-32.) Retaining that first installment was expressly contingent, however, on Defendant fulfilling the entirety of his obligations under the contract. (Doc. 1-5 at 6.) Thus, by failing to turn over all post-transition collections of accounts receivable and refusing to provide information regarding the same, Bryant was in breach. (Doc. 1 ¶¶ 34-37.) Plaintiff submitted a copy of the Transition Agreement which substantiates these amounts and is signed by Defendant Bryant, individually, and on behalf of Summit and Prairie Ridge. (Doc. 1-1 at 93, 95.) The court finds that the evidence submitted satisfies the requirements of Rule 55 and therefore enters judgment totaling $75,000 with regard to breach of the Transition Agreement.

Plaintiff also seeks post-judgment interest from and after the date of judgment accruing pursuant to 28 U.S.C. § 1961. (Doc. 9 at 4.) Post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a). Post-judgment interest is due on the entire amount of the award, including both damages and prejudgment interest thereon. *Bancamerica Commercial Corp. v. Mosher Steel of Kansas, Inc.*, 103 F.3d 80, 82 (10th Cir. 1996) ("Moreover, the monetary award upon which post-judgment interest should accrue is the entire award granted by the district court, including the forthcoming award of prejudgment interest."). The court finds that Plaintiff is entitled to post-judgment interest.

Based on the foregoing, the court finds an award of $501,379.63 in damages along with post-judgment interest pursuant to 28 U.S.C. § 1961, to be appropriate.

2. **Attorneys' Fees and Costs**

Plaintiff also asks this court for costs and attorney's fees. (Doc. 9 at 4.) Federal Rule of Civil Procedure 54(d)(2) provides that a motion for attorney's fees is to be made within fourteen days after judgment. Judgment has not yet been entered in this case. Further, to award a party attorney's fees under Kansas law, the court must determine whether the requested fee amount is reasonable after considering several factors. *See Kan. Penn Gaming, LLC v. HV Props. of Kan., LLC*, 790 F. Supp. 2d 1307, 1311 (D. Kan.), *aff'd*, 662 F.3d 1275 (10th Cir. 2011). While Plaintiff included much of this information as exhibits to the instant motion, counsel is encouraged to review the factors and include such information to assist the court in making findings regarding the reasonableness of the fees. Therefore, the motion is denied with respect to the request for attorney's fees. Plaintiff may file a motion pursuant to Rule 54 after judgment is entered.

IV. **Conclusion**

THEREFORE, Plaintiff's motion for default judgment (Doc. 9) is GRANTED IN PART and DENIED IN PART.  Plaintiff may move for attorney's fees pursuant to Rule 54 after judgment is entered.

IT IS SO ORDERED.  Dated this 27th day of January, 2026.

                                                                               s/ John W. Broomes
                                                                               JOHN W. BROOMES
                                                                               CHIEF UNITED STATES DISTRICT JUDGE